JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Scott J. Greenberg
Lisa Laukitis

 - and -

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
David G. Heiman (admitted *pro hac vice*)
Carl E. Black (admitted *pro hac vice*)

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
|  |  |
|---|---|
| In re: | Chapter 11 |
| NII Holdings, Inc., <u>et al.</u>,[1] | Case No. 14-12611 (SCC) |
| Debtors. | (Jointly Administered) |
------------------------------------------------------------x

<u>**NOTICE OF SUPPORT STIPULATION**</u>

---

[1]    The debtors in the jointly administered chapter 11 cases (the "<u>Debtors</u>") are comprised of the following thirteen entities (the last four digits of their respective U.S. taxpayer identification numbers follow in parentheses): NII Holdings, Inc. (1412); Nextel International (Services), Ltd. (6566); NII Capital Corp. (6843); NII Aviation, Inc. (6551); NII Funding Corp. (6265); NII Global Holdings, Inc. (1283); NII International Telecom S.C.A. (7498); NII International Holdings S.à r.l. (N/A); NII International Services S.à r.l. (6081); Airfone Holdings, LLC (1746); Nextel International (Uruguay), LLC (5939); McCaw International (Brazil), LLC (1850); and NII Mercosur, LLC (4079).

On January 25, 2015, NIU Holdings LLC (N/A), an affiliate of the Debtors, filed a chapter 11 bankruptcy petition and will be seeking relief to join its case to the above-captioned jointly administered cases.

The location of the Debtors' corporate headquarters and the Debtors' service address is: 1875 Explorer Street, Suite 800, Reston, VA 20190.

**PLEASE TAKE NOTICE THAT:**

1.      On January 26, 2015, Debtor NII Holdings, Inc. publicly announced the sale of the company's operations in Mexico pursuant to a Purchase and Sale Agreement with New Cingular Wireless Services, Inc., an affiliate of AT&T, which will be subject to higher or otherwise better offers.

2.      The Debtors will soon be filing a motion with the Court regarding the approval of bidding procedures, the sale and other related relief.  Attached hereto as Exhibit A is a Support Stipulation (the "Support Stipulation") in support of the proposed sale,[2] dated January 26, 2015, executed by (a) the official committee of unsecured creditors appointed in the Debtors' bankruptcy cases; (b) Capital Group; (c) Aurelius Capital Management, LP, and certain entities managed by it; (d) the Debtors and (e) New Cingular Wireless Services, Inc.

---

[2]      Capitalized terms not otherwise defined herein have the meanings given to them in the Support Stipulation.

Dated: January 26, 2015
     New York, New York

Respectfully submitted,

 /s/    Scott J. Greenberg
Scott J. Greenberg
Lisa Laukitis
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

 - and -

David G. Heiman (admitted *pro hac vice*)
Carl E. Black (admitted *pro hac vice*)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

## EXHIBIT A

**EXECUTION VERSION**

## SUPPORT STIPULATION

THIS SUPPORT STIPULATION (the "**Stipulation**") is entered into as of January 26, 2015 by and among: (i) the Official Committee of Unsecured Creditors (the "**Committee**"); (ii) Capital Research and Management Company on behalf of itself and its affiliates and funds and accounts managed by it, including those entities holding Company Notes (as defined below) in the amount set forth on their respective signature pages hereto ("**Capital Group**") ; (iii) Aurelius Capital Management, LP on behalf of itself and its affiliates and funds and accounts managed by it, including those entities holding Company Notes in the amount set forth on their respective signature pages hereto (collectively, "**Aurelius**"; together with Capital Group, the "**Supporting Noteholders**"; and together with the Committee, the "**Supporting Parties**"); (iv) the Debtors (as defined below) and (v) New Cingular Wireless Services, Inc. (the "**Purchaser**"; and together with the Supporting Parties and the Debtors, the "**Parties**").

WHEREAS, the Supporting Parties understand that Seller, Seller Parent, Seller Guarantors, Company Parent and Purchaser have entered into a Purchase and Sale Agreement (the "**Purchase Agreement**") in substantially the form attached hereto as <u>Annex A</u> in connection with the sale to Purchaser of 100% of the Company Parent Interests (the "**Sale**") to effectuate an indirect sale of the Company, subject to higher or better offers. Capitalized terms used but not otherwise defined in this Stipulation have the respective meanings ascribed thereto in the Purchase Agreement;

WHEREAS, NII Capital Corp. ("**Capco**") has issued the following series of senior unsecured notes (collectively, the "**Capco Notes**"): (i) $1,450,000,000 in principal amount of 7.625% senior unsecured notes due 2021; (ii) $500,000,000 in principal amount of 8.875% senior unsecured notes due 2019; (iii) $800,000,000 in principal amount of 10.0% senior unsecured notes due 2016;

WHEREAS, NII International Telecom S.C.A. ("**Luxco**") has issued the following series of senior unsecured notes (collectively, the "**Luxco Notes**" and, together with the Capco Notes, the "**Company Notes**"): (i) $700,000,000 in principal amount of 7.875% senior unsecured notes due 2019; and (ii) $900,000,000 in principal amount of 11.375% senior unsecured notes due 2019;

WHEREAS, the Debtors[1] expect to file (i) the Bidding Procedures Motion on January [27], 2015 seeking approval of the Bidding Procedures Order (in substantially the form attached as <u>Exhibit B</u> to the Purchase Agreement) and the Sale Order (in substantially the form attached as <u>Exhibit C</u> to the Purchase Agreement) collectively, the "**Sale Pleadings**") and (ii) a copy of this Stipulation in support of the Bidding Procedures Motion; and

---

[1]    The "**Debtors**" means, collectively: NII Holdings, Inc.; Nextel International (Services), Ltd.; NII Capital Corp.; NII Aviation, Inc.; NII Funding Corp.; NII Global Holdings, Inc.; NII International Telecom S.C.A.; NII International Holdings S.à r.l.; NII International Services S.à r.l.; Airfone Holdings, LLC; Nextel International (Uruguay), LLC; McCaw International (Brazil), LLC; NII Mercosur, LLC; and, as of o or about January 22, 2015, NIU Holdings LLC.

WHEREAS, in support of the relief sought in the Sale Pleadings, the Purchaser has requested that each Supporting Party support the relief requested in the Sale Pleadings.

NOW, THEREFORE, in consideration of the foregoing and the covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, that subject to the Purchaser's compliance with its obligations under the Purchase Agreement and the Sale Pleadings, it is hereby stipulated by and among the Parties as follows:

1.      Each Supporting Party believes that entry of the Bidding Procedures Order, and effectuating a sale of the Company in accordance with the Sale Pleadings and the procedures set forth therein, is in the best interest of the Debtors and their respective estates, and will, subject to an auction in the manner set forth in the Bid Procedures, allow for a process that will achieve the highest or otherwise best value for the Debtors' estates.

2.      The Sale Pleadings and Purchase Agreement are in a form that are reasonably acceptable to each Supporting Party.

3.      Each Supporting Party supports entry of, and agrees not to object to, or support any other person in objecting to entry of the Bidding Procedures Order.

4.      Each Supporting Party (a) supports, pursuant to the terms of the Purchase Agreement, the Sale to the Purchaser, the entry of the Sale Order, the assumption by Seller of all the liabilities of Company Parent, the novation by Company Parent of all of its liabilities to Seller, the attachment of all 363 Interests to the proceeds of the Sale to be held by Seller and the dismissal of Company Parent's bankruptcy case and (b) agrees not to object to, or support any other person in objecting to, the entry of the Sale Order with the Purchaser, in each case, assuming (i) compliance by the Debtors with the Bidding Procedures, (ii) the Purchaser is the successful bidder at the auction, if any, and (iii) the Debtors' ability to consummate a sale of 100% of the Company Parent Interests to another bidder on the terms and conditions set forth in the Bidding Procedures.

5.      Each Supporting Party agrees not to take any other action, or support or instruct any other person in taking, any action that would delay, impede or interfere with the approval of the Sale Order.

6.      Except as expressly provided herein, this Stipulation shall not in any way restrict the right or ability of any Supporting Noteholder to sell, use, assign, transfer or otherwise dispose of (**"Transfer"**) any claims as such term is defined in section 101(5) of the Bankruptcy Code (each a **"Claim"** and, collectively, the **"Claims"**); provided, however, that, for the period commencing as of the date hereof until the termination of this Stipulation pursuant to the terms hereof, no Supporting Noteholder shall Transfer any Claims, and any purported Transfer of Claims shall be null and void *ab initio*, unless (a) the transferee is a Supporting Noteholder, or (b) if the transferee is not a Supporting Noteholder, such transferee delivers to the Company and Purchaser within three (3) business days of the Transfer an executed joinder to this Agreement in the form attached hereto as Exhibit 1 (a "**Joinder Agreement**") pursuant to which such transferee shall have assumed all obligations of the Supporting Noteholder transferring such

Claims and shall become a Supporting Noteholder; provided, further, that, if the transferor of the Claims is a Supporting Noteholder, the transferee of such Claims shall also become a Supporting Noteholder.[2]  Any purported Transfer of Claims in violation of the foregoing shall be null and void *ab initio*.  This Stipulation shall in no way be construed to preclude any Supporting Noteholder from acquiring additional Claims; provided, however, that any such additional Claims acquired by a Supporting Noteholder shall automatically and immediately upon acquisition by such Supporting Noteholder be deemed subject to all of the terms of this Stipulation, whether or not notice of such acquisition is given to the Company, and that, so long as this Stipulation has not been terminated.

7.      Notwithstanding anything to the contrary set forth in the Plan Support Agreement filed as Exhibit A to Docket No. 249 (the "**Plan Support Agreement**"), the Supporting Parties agree not to take any action that is inconsistent with their rights and obligations hereunder, including (i) entering into any agreement that conflicts with or would result in a breach under this Stipulation and (ii) pursuing or supporting , in any way, any plan of reorganization (including the Joint Plan of Reorganization Proposed by Debtors and Debtors in Possession and Official Committee of Unsecured Creditors filed at Docket No. 322) that does not contemplate the Sale.  The Supporting Parties and the Debtors further agree that the entry into this Stipulation shall not constitute a violation of, or a Termination Event under, the Plan Support Agreement.

8.      Each Supporting Noteholder individually represents, warrants, and covenants to each other Party, as of the date of this Stipulation (or, with respect to a transferee, as of the date of such Transfer pursuant to the applicable Joinder Agreement), as follows (each of which is a continuing representation, warranty, and covenant):

---

[2]      Notwithstanding anything herein to the contrary, (A) any Supporting Noteholder may transfer (by purchase, sale, assignment, participation or otherwise) any right, title or interest in such Claims against the Debtors to an entity that is acting in its capacity as a Qualified Marketmaker (as defined below) without the requirement that the Qualified Marketmaker be or become a Supporting Noteholder, provided that the Qualified Marketmaker subsequently transfers (by purchase, sale, assignment, participation or otherwise) within ten (10) days of its receipt thereof the right, title or interest in such Claims against the Debtors to a transferee that is a Supporting Noteholder or becomes a Supporting Noteholder by executing a Joinder Agreement that is delivered to the Debtors within such time period, and such Transfer shall be null and void ab initio in the event the Qualified Marketmaker fails to subsequently transfer such Claims to a transferee that is or becomes a Supporting Noteholder by executing a Joinder Agreement and (B) to the extent that a Supporting Noteholder is acting in its capacity as a Qualified Marketmaker, it may transfer (by purchase, sale, assignment, participation or otherwise) any right, title or interest in Claims against the Debtors that the Qualified Marketmaker acquires from a holder of the Claims who is not a Supporting Noteholder without the requirement that the transferee of such Claims be or become a Supporting Noteholder.

For these purposes, a "**Qualified Marketmaker**" means an entity that (A) holds itself out to the market as standing ready in the ordinary course of its business to purchase from customers and sell to customers claims against the Debtors (including debt securities or other debt) or enter with customers into long and short positions in claims against the Debtors (including debt securities or other debt), in its capacity as a dealer or market maker in such claims against the Debtors, and (B) is in fact regularly in the business of making a market in claims against issuers or borrowers (including debt securities or other debt).  For the avoidance of doubt, a Supporting Noteholder, or an affiliate of or fund managed by a Supporting Noteholder, shall not be Qualified Marketmaker.

KL2 2880871 12
SC1:3782498 12

a.   It is validly existing and in good standing under the laws of the state of its organization, and this Stipulation is the legally valid and binding obligation of such Party, enforceable against it in accordance with its terms;

b.   The execution, delivery and performance by such Party of this Stipulation does not and shall not (i) violate (x) any provision of law, rule or regulation applicable to it or any of its subsidiaries, as applicable or (y) its charter or bylaws (or other similar governing documents) or those of any of its subsidiaries, as applicable, or (ii) conflict with, result in a breach of, or constitute (with due notice or lapse of time or both) a default under, any material contractual obligation to which it or any of its affiliates, as applicable, is a party;

c.   Except as expressly provided in this Stipulation, no consent or approval is required by any other person or entity in order for it to perform its obligations under this Stipulation; and

d.   It has all requisite corporate, partnership, limited liability company or similar authority to execute this Stipulation and perform its obligations contemplated hereunder, and the execution and delivery of this Stipulation and the performance of such Party's obligations hereunder have been duly authorized by all necessary corporate, partnership, limited liability company or other similar action on its part.

e.   it (i) is either (a) the sole beneficial owner of the principal amount of Claims set forth below its signatures hereto, or (b) has sole investment or voting discretion with respect to the principal amount of Claims set forth below its signatures hereto and has the power and authority to bind the beneficial owner(s) of such Claims to the terms of this Stipulation, (ii) has full power and authority to act on behalf of, vote and consent to matters concerning such Claims and to dispose of, exchange, assign, and transfer such Claims and (iii) except as set forth under a signatory's signature page, its affiliates and any funds or accounts managed by it, hold no other Claims;

f.   other than pursuant to this Stipulation, its Claims are free and clear of any pledge, lien, security interest, charge, claim, equity, option, proxy, voting restriction, right of first refusal, or other limitation on disposition or encumbrance of any kind that would adversely affect in any way such Supporting Noteholder's performance of its obligations contained in this Stipulation at the time such obligations are required to be performed; and

g.   it has made no prior assignment, sale, participation, grant, conveyance, pledge, or other Transfer of, and has not entered into any other agreement to assign, sell, participate, grant, convey, pledge, or otherwise Transfer, in whole or in part, any portion of its right, title, or interests in any of the Claims that are inconsistent or conflict with representations and warranties of such Supporting Noteholder herein or that would render it otherwise unable to comply with this Stipulation and perform its obligations hereunder, either generally or with respect to any specific Claims.

9.   The Committee represents, warrants, and covenants to each other Party, as of the date of this Stipulation, as follows (each of which is a continuing representation, warranty, and covenant):

-4-

a.    The execution, delivery and performance by such Party of this Stipulation does not and shall not (i) violate (x) any provision of law, rule or regulation applicable to it or (y) its charter or bylaws (or other similar governing documents), or (ii) conflict with, result in a breach of, or constitute (with due notice or lapse of time or both) a default under, any material contractual obligation to which it is a party;

b.    Except as expressly provided in this Stipulation, no consent or approval is required by any other person or entity in order for it to perform its obligations under this Stipulation; and

c.    It has all requisite authority to execute this Stipulation and perform its obligations contemplated hereunder, and the execution and delivery of this Stipulation and the performance of such Party's obligations hereunder have been duly authorized by all necessary action on its part.

10.    This Stipulation (a) will automatically terminate upon earlier of (x) the valid termination of the Purchase Agreement in accordance with its terms and (y) the 30th business day after the consummation of the Sale or (b) may be terminated by (i) the mutual consent of each Party or (ii) any Supporting Party upon two (2) business days prior written notice delivered to the other Parties if the Purchase Agreement, Sale Order or Bidding Procedures Order is amended or modified in any manner that is adverse to a Supporting Party and such terminating Supporting Party is not otherwise in breach of this Stipulation, unless such Supporting Party provides its consent not to be unreasonably withheld.

11.    No modification, cancellation, discharge or waiver of, or with respect to, any provision of this Stipulation, or consent to any departure from any of the terms or conditions hereof, shall be effective unless it shall be in writing and signed by the Parties.

12.    This Stipulation constitutes the entire agreement among the Parties concerning the with respect to the subject matter hereof, and supersedes any prior understandings, agreements or representations by or among the Parties, written or oral, to the extent they relate in any way to the subject matter hereof.

13.    The Bankruptcy Court retains jurisdiction with respect to all matters arising from or related to the enforcement of this Stipulation.

14.    This Stipulation shall be construed and interpreted in accordance with the laws of the State of New York, without regard to the choice of law principles of the State of New York.

15.    This Stipulation may be executed in counterparts, and any Party may execute any such counterpart, each of which when executed and delivered shall be deemed to be an original and all of which counterparts taken together shall constitute but one and the same instrument. The parties agree that the delivery of this Stipulation may be effected by means of an exchange of signatures via facsimile transmission, .pdf or other electronic transmission.

16.    This Stipulation is intended to bind and inure to the benefit of the Parties and their respective successors, assigns, heirs, executors, administrators and representatives; provided that

nothing contained in this paragraph 16 shall be deemed to permit sales, assignments, or other Transfers of Claims against the Company other than in accordance with this Stipulation.

17.     Notwithstanding anything to the contrary in this Stipulation, nothing in this Stipulation shall require the Committee or its members (in such member's capacity as a member) to take any action, or to refrain from taking any action, to the extent that taking such action or refraining from taking such action would be inconsistent with, or cause such party to breach, such party's fiduciary obligations under the Bankruptcy Code and applicable law.  For the avoidance of doubt, the obligations of the Committee under this Stipulation shall be binding on the Committee itself. Nothing set forth in this Stipulation shall be construed to bind any individual member of the Committee in its individual capacity, unless such member has separately executed this Stipulation or a Joinder Agreement in its individual capacity.

18.     It is understood and agreed by the Supporting Parties that money damages would be an insufficient remedy for any breach of this Stipulation by any Supporting Party and a non-breaching Party may be entitled to seek specific performance and injunctive or other equitable relief as a remedy of any such breach, including, without limitation, an order of the Bankruptcy Court or other court of competent jurisdiction requiring any Party to comply promptly with any of its obligations hereunder; provided, however, that each Party agrees to waive any requirement for the securing or posting of a bond in connection with such remedy.

**[signatures on following page]**

**IN WITNESS WHEREOF**, the parties hereto have executed this Stipulation as of the date set forth above.

KL2 2880871 12
SC1:3782498 12

**IN WITNESS WHEREOF,** the parties hereto have executed this Stipulation as of the date set forth above.

NEW CINGULAR WIRELESS SERVICES, INC.

By: _____

Name: Rick L. Moore
Title: Senior Vice President-Corporate
Development

[Signature Page to Stipulation]

NII HOLDINGS, INC., ET AL.
DEBTORS AND DEBTORS IN POSSESSION

By its counsel:

JONES DAY

By:   /s/ Scott J. Greenberg
         Name:  Scott J. Greenberg
         Title:  Partner
         JONES DAY
         222 East 41st Street
         New York, New York  10017
         Telephone:  (212) 326-3939
         Facsimile:  (212) 755-7306

[Signature Page to Stipulation]

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF NII HOLDINGS, INC., ET AL.

By its counsel:

KRAMER LEVIN NAFTALIS & FRANKEL
LLP

By: _____

Name: ADAM C. ROGOFF

Title: PARTNER

[Signature Page to Stipulation]

AURELIUS CAPITAL MANAGEMENT, LP

By: _____
Name: Dan Gropper
Title: Managing Director


ACP MASTER, LTD.

By: Aurelius Capital Management, LP, solely as
investment manager and not in its individual
capacity

By: _____
Name: Dan Gropper
Title: Managing Director

Aggregate principal amount of Claims beneficially
owned or managed on behalf of funds or accounts
that beneficially own such Claims:

REDACTED

[Signature Page to Stipulation]

AURELIUS CAPITAL MASTER, LTD.

By: Aurelius Capital Management, LP, solely as
investment manager and not in its individual
capacity

By: _____

Name: Dan Gropper
Title: Managing Director

Aggregate principal amount of Claims beneficially
owned or managed on behalf of funds or accounts
that beneficially own such Claims:

REDACTED

[Signature Page to Stipulation]

AURELIUS CONVERGENCE MASTER, LTD.

By:  Aurelius Capital Management, LP, solely as
investment manager and not in its individual
capacity

By: _____

Name: Dan Gropper
Title: Managing Director

Aggregate principal amount of Claims beneficially
owned or managed on behalf of funds or accounts
that beneficially own such Claims:

REDACTED

[Signature Page to Stipulation]

AURELIUS INVESTMENT, LLC

By:  Aurelius Capital Management, LP, solely as
manager and not in its individual capacity

By: _____

Name: Dan Gropper
Title: Managing Director

Aggregate principal amount of Claims beneficially
owned or managed on behalf of funds or accounts
that beneficially own such Claims:

REDACTED

[Signature Page to Stipulation]

CAPITAL RESEARCH AND MANAGEMENT
COMPANY, as investment adviser to certain funds
that are beneficial owners of Claims and affiliate of
Capital Guardian Trust Company

By: _____

Name:  Kristine M. Nishiyama
Title:  Authorized Signatory

CAPITAL GUARDIAN TRUST COMPANY, as
investment adviser to certain accounts that are
beneficial owners of the Claims noted below and
excluded from this Stipulation

By: _____

Name:  Mark E. Brubaker
Title:  Senior Vice President and Senior Counsel

Aggregate principal amount of Claims beneficially
owned or managed on behalf of funds or accounts that
beneficially own such Claims and excluded from this
Stipulation:

REDACTED

[Signature Page to Stipulation]

CAPITAL INTERNATIONAL GLOBAL HIGH
INCOME OPPORTUNITIES

By: Capital International Sàrl, for and on behalf of
Capital International Global High Income
Opportunities

By: _____
Name:  Fabrice Remy
Title:   Vice President

By: _____
Name:  Guido Caratsch
Title:   Corporate Manager and Secretary of
the Board

Aggregate principal amount of Claims beneficially
owned or managed on behalf of funds or accounts
that beneficially own such Claims:

REDACTED

[Signature Page to Stipulation]

CAPITAL GROUP STRATEGIC
OPPORTUNITIES FUND

By:  Capital Research and Management Company,
for and on behalf of Capital Group Strategic
Opportunities Fund

By: _____

    Name:  Kristine M. Nishiyama
    Title:   Authorized Signatory

Aggregate principal amount of Claims beneficially
owned or managed on behalf of funds or accounts
that beneficially own such Claims:

REDACTED

[Signature Page to Stipulation]

AMERICAN HIGH-INCOME TRUST

By: Capital Research and Management Company,
for and on behalf of American High-Income Trust

By: _____
    Name: Kristine M. Nishiyama
    Title:   Authorized Signatory

Aggregate principal amount of Claims beneficially
owned or managed on behalf of funds or accounts
that beneficially own such Claims:

REDACTED

THE BOND FUND OF AMERICA

By:  Capital Research and Management Company,
for and on behalf of The Bond Fund of America

By: _____
         Name:  Kristine M. Nishiyama
         Title:   Authorized Signatory


Aggregate principal amount of Claims beneficially
owned or managed on behalf of funds or accounts
that beneficially own such Claims:

REDACTED

CAPITAL INCOME BUILDER

By:  Capital Research and Management Company,
for and on behalf of Capital Income Builder

By:  _____
    Name:  Kristine M. Nishiyama
    Title:    Authorized Signatory

Aggregate principal amount of Claims beneficially
owned or managed on behalf of funds or accounts
that beneficially own such Claims:

REDACTED

THE GROWTH FUND OF AMERICA

By:  Capital Research and Management Company,
for and on behalf of The Growth Fund of America

By:  _____
      Name:  Kristine M. Nishiyama
      Title:   Authorized Signatory

Aggregate principal amount of Claims beneficially
owned or managed on behalf of funds or accounts
that beneficially own such Claims:

REDACTED

AMERICAN FUNDS GLOBAL HIGH-INCOME
OPPORTUNITIES FUND

By:  Capital Research and Management Company,
for and on behalf of American Funds Global High-
Income Opportunities Fund

By: _____
/Name:  Kristine M. Nishiyama
Title:   Authorized Signatory

Aggregate principal amount of Claims beneficially
owned or managed on behalf of funds or accounts
that beneficially own such Claims:

REDACTED

THE INCOME FUND OF AMERICA

By: Capital Research and Management Company,
for and on behalf of The Income Fund of America

By: _____
    Name:  Kristine M. Nishiyama
    Title:   Authorized Signatory

Aggregate principal amount of Claims beneficially
owned or managed on behalf of funds or accounts
that beneficially own such Claims:

REDACTED

INTERNATIONAL GROWTH AND INCOME
FUND

By:  Capital Research and Management Company,
for and on behalf of International Growth and
Income Fund

By:    _____
          Name:  Kristine M. Nishiyama
          Title:    Authorized Signatory


Aggregate principal amount of Claims beneficially
owned or managed on behalf of funds or accounts
that beneficially own such Claims:

REDACTED

AMERICAN FUNDS INSURANCE SERIES
– ASSET ALLOCATION FUND

By:  Capital Research and Management Company,
for and on behalf of American Funds Insurance
Series – Asset Allocation Fund

By: _____

Name:  Kristine M. Nishiyama
Title:   Authorized Signatory

Aggregate principal amount of Claims beneficially
owned or managed on behalf of funds or accounts
that beneficially own such Claims:

REDACTED

AMERICAN FUNDS INSURANCE SERIES
– BOND FUND

By:  Capital Research and Management Company,
for and on behalf of American Funds Insurance
Series – Bond Fund

By:  _____
      Name:  Kristine M. Nishiyama
      Title:    Authorized Signatory

Aggregate principal amount of Claims beneficially
owned or managed on behalf of funds or accounts
that beneficially own such Claims:

REDACTED

AMERICAN FUNDS INSURANCE SERIES
– GLOBAL BOND FUND

By: Capital Research and Management Company,
for and on behalf of American Funds Insurance
Series – Global Bond Fund

By: _____
    Name:  Kristine M. Nishiyama
    Title:    Authorized Signatory

Aggregate principal amount of Claims beneficially
owned or managed on behalf of funds or accounts
that beneficially own such Claims:

REDACTED

AMERICAN FUNDS INSURANCE SERIES
– GLOBAL GROWTH AND INCOME FUND

By:  Capital Research and Management Company,
for and on behalf of American Funds Insurance
Series – Global Growth and Income Fund

By: _____
    Name:  Kristine M. Nishiyama
    Title:    Authorized Signatory

Aggregate principal amount of Claims beneficially
owned or managed on behalf of funds or accounts
that beneficially own such Claims:

REDACTED

AMERICAN FUNDS INSURANCE SERIES
– HIGH-INCOME BOND FUND

By:  Capital Research and Management Company,
for and on behalf of American Funds Insurance
Series – High-Income Bond Fund

By:  _____
Name:  Kristine M. Nishiyama
Title:   Authorized Signatory

Aggregate principal amount of Claims beneficially
owned or managed on behalf of funds or accounts
that beneficially own such Claims:

REDACTED

CAPITAL WORLD BOND FUND

By: Capital Research and Management Company,
for and on behalf of Capital World Bond Fund

By:  _____
      Name:  Kristine M. Nishiyama
      Title:  Authorized Signatory

Aggregate principal amount of Claims beneficially
owned or managed on behalf of funds or accounts
that beneficially own such Claims:

REDACTED

SMALLCAP WORLD FUND, INC.

By:  Capital Research and Management Company,
for and on behalf of SMALLCAP World Fund, Inc.

By:  _____
Name:  Kristine M. Nishiyama
Title:    Authorized Signatory

Aggregate principal amount of Claims beneficially
owned or managed on behalf of funds or accounts
that beneficially own such Claims:


REDACTED

CAPITAL GROUP GLOBAL HIGH-INCOME
OPPORTUNITIES TRUST (US)

By: Capital Guardian Trust Company, for and on
behalf of Capital Group Global High-Income
Opportunities Trust (US)

By: _____

    Name:  Mark E. Brubaker
    Title:    Senior Vice President and Senior
              Counsel

Aggregate principal amount of Claims beneficially
owned or managed on behalf of funds or accounts
that beneficially own such Claims:

REDACTED

CAPITAL GROUP US HIGH-YIELD FIXED-
INCOME TRUST (US)

By:  Capital Guardian Trust Company, for and on
behalf of Capital Group US High-Yield Fixed-
Income Trust (US)

By:  _____
Name:  Mark E. Brubaker
Title:    Senior Vice President and Senior
         Counsel

Aggregate principal amount of Claims beneficially
owned or managed on behalf of funds or accounts
that beneficially own such Claims:

REDACTED

## EXHIBIT 1

### FORM OF JOINDER AGREEMENT

This JOINDER AGREEMENT to that certain Support Stipulation entered into as of January 26, 2015 by and among: (i) the Official Committee of Unsecured Creditors (the "Committee"); (ii) Capital Research and Management Company on behalf of itself and its affiliates and funds and accounts managed by it, including those entities holding Company Notes (as defined in the Support Stipulation) in the amount set forth on their respective signature pages to the Support Stipulation ("Capital Group") ; (iii) Aurelius Capital Management, LP on behalf of itself and its affiliates and funds and accounts managed by it, including those entities holding Company Notes in the amount set forth on their respective signature pages to the Support Stipulation (collectively, "Aurelius"; together with Capital Group, the "Supporting Noteholders"; and together with the Committee, the "Supporting Parties"); (iv) the Debtors (as defined in the Support Stipulation) and (v) New Cingular Wireless Services, Inc. (the "Purchaser"; and together with the Supporting Parties and the Debtors, the "Parties") and attached hereto as Exhibit A (as amended, modified, or amended and restated from time to time in accordance with its terms, the "Support Stipulation"), is hereby executed and delivered by **[FUND and its Management Company]** (the "Joining Party").

Capitalized terms used herein but not otherwise defined shall have the meanings set forth in the Support Stipulation.

Agreement to be Bound.   The Joining Party hereby agrees, on a several basis, to be bound by the Support Stipulation in accordance with its terms.   The Joining Party shall hereafter be deemed to be a Party, and to the extent the Joining Party is a transferee of a Supporting Noteholder, such Joining Party shall hereafter be deemed to be a Supporting Noteholder, for any and all purposes under the Support Stipulation.   For the avoidance of doubt, the obligations of the Joining Party under the Support Stipulation shall apply with respect to all Claims held by such Joining Party, and any such additional Claims acquired by a Joining Party hereafter shall automatically and immediately upon acquisition by such Joining Party be deemed subject to all of the terms of the Support Stipulation, so long as the Support Stipulation has not been terminated.   In the event of any inconsistency between this Joinder Agreement and the Support Stipulation, the Support Stipulation shall control in all respects.

Representations and Warranties.   The Joining Party hereby makes the representations and warranties of the Parties set forth in Section 8 of the Support Stipulation to each other Party to the Support Stipulation; provided that the representations and warranties set forth in paragraphs 8(e), (f) and (g)(solely as paragraph 8(g) pertains to any specific claims) of the Support Stipulation shall apply solely to the Claims set forth below its name on the signature page hereof.

Governing Law.   This Joinder Agreement shall be governed by and construed in accordance with the internal laws of the State of New York, without regard to any conflicts of laws principles thereof that would require the application of the law of any other jurisdiction.

<u>Jurisdiction</u>.    The Bankruptcy Court retains jurisdiction with respect to all matters arising from or related to the enforcement of this Joinder Agreement.

Date executed:   [_____]

[NAME OF TRANSFEREE]


By:   _____
Name:
Title:

Address:   _____
           _____
Attn.:     _____
Tel.:      _____
Fax:       _____
Email:     _____

Aggregate principal amount of Claims acquired:

Capco 2016 Notes Claims:

$_____

Capco 2019 Notes Claims:

$_____

Capco 2021 Notes Claims:

$_____

Luxco 7.875% Notes Claims:

$_____

Luxco 11.375% Notes Claims:

$_____

Other Claims

$_____

[Signature Page to Joinder Agreement to Plan Support Agreement]

## Exhibit A

**Support Stipulation**